UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CATHERYN BABIN                               CIVIL ACTION

v.                                           NO. 16-2954

THE PARISH OF JEFFERSON, ET AL.              SECTION "F"


ORDER AND REASONS

Before the Court are two motions: (1) Jefferson Parish's
motion for summary judgment; and (2) Jefferson Parish Sheriff
Deputy Micah Blange's and Sheriff Newell Normand's motion for
summary judgment. For the reasons that follow, the Parish's motion
is GRANTED insofar as it is entitled to judgment as a matter of
law dismissing the plaintiff's facial vagueness challenge to the
animal cruelty ordinance, and the law enforcement defendants'
motion is DENIED without prejudice.

**Background**

On April 11, 2015, shortly after noon in Jefferson Parish,
Louisiana, the temperature was in the low 70s with overcast skies.[1]
Catheryn Babin was driving her two-door Mini-Cooper convertible.

---

[1] The facts are summarized in the light most favorable to Ms. Babin.

1

Riding as passenger was her two-year-old Catahoula/Labrador mix, Peyton Legion, a trained service dog. Ms. Babin and Peyton Legion were on their way home from a senior citizen center, where Peyton Legion had spent the morning working with residents there suffering from Alzheimer's disease. On the way from the center to her house, Ms. Babin stopped at Big Lots on Veterans Boulevard in Jefferson Parish to buy dog food. Leaving the windows rolled down, the car doors unlocked, and the convertible top pulled back to expose the front seats,[2] Ms. Babin went into the store; Peyton Legion waited in the car.

Meanwhile, at 12:12 p.m., while Ms. Babin was shopping in Big Lots, a woman named Ashley McMurry[3] called the Jefferson Parish 911 operator to complain that a dog was left unattended for 10 minutes. Ms. McMurry apparently told the operator that the dog was panting and looked "uncomfortable," although she also told the operator that the windows were down, it was "not that hot," and

---

[2] Whether or not the convertible top was left open is "disputed," according to Jefferson Parish. As the record stands now, however, there is no evidence indicating that the convertible top was closed. The only evidence in the summary judgment record is the plaintiff's deposition transcript and her sworn declaration. She says the convertible top was open over the front seats.

[3] A one "Ashley McMurry" is identified in the plaintiff's complaint as the complaining witness in the Big Lots parking lot. However, the Court notes that the witness lists filed by all parties reference an Ashley McWhirter. No affidavit or deposition transcript or any statement by this complaining witness is of record.

that the dog did not appear to be in distress.[4]  Jefferson Parish Sheriff's Office dispatched a law enforcement officer to the scene.

When Ms. Babin exited Big Lots, Ms. McMurry confronted her, complaining that the dog was left alone in the car.  Ms. Babin showed her that the door was unlocked; as soon as she opened the car door, Peyton Legion came to Ms. Babin and he was then on-leash at Ms. Babin's side in the parking lot.  Nevertheless, Ms. McMurry continued to complain and berate Ms. Babin.

At about 12:25 p.m., Jefferson Parish Sheriff's Office Deputy Micah Blange, in full police uniform, arrived on the scene in his marked vehicle.  He first spoke with an unidentified individual as well as Ms. McMurry (whom "hurried after" Blange when he pulled into the parking lot).[5]  Soon thereafter, another Jefferson Parish Sheriff's deputy, Michael Voltolina, Jr., arrived at Big Lots. Unlike Blange, Voltolina drove up to where Ms. Babin had parked, examined Ms. Babin's car, and explained to her that deputies were

---

[4] Because no party has submitted the audio recording or transcript from the 911 call, nor is any complaining witness statement or deposition transcript of record, this information is drawn from the plaintiff's complaint, the plaintiff's deposition transcript, or the plaintiff's sworn declaration; the only items in the summary judgment record.

[5] Ms. Babin could not hear what was being discussed among the complaining witnesses and Deputy Blange.  Apparently, they were not having their discussion near Ms. Babin's vehicle.  Nor does this Court have before it any evidence indicating what was said to Blange by any complaining witnesses.

required to come to the scene to investigate, but that he did not see cause for issuing a summons.[6]  After Voltolina left Ms. Babin, Deputy Blange drove over to where her car was parked and where she was standing next to her car with Peyton Legion.  Blange parked his police cruiser to the rear and perpendicular to Ms. Babin's vehicle, blocking her into the parking space.  Blange did not exit his vehicle, but instead called Ms. Babin over to his car, telling her "I need to see your driver's license," which she retrieved from her car and handed to him.  Blange then asked her a couple questions regarding her identity, and then asked why she had not left her dog at home.  Ms. Babin explained that she and Peyton Legion were on their way home from visiting a senior center.

Without more, Blange told Ms. Babin that he was issuing her a criminal misdemeanor summons.  Ms. Babin asked why, to which Blange responded that it was "two against one" (ostensibly referring to Ms. McMurry and the other "concerned citizen").  After completing the summons, Blange exited his car to hand it over to Ms. Babin.  He then returned her driver's license, and got back in his car.  At that point, Blange indicated to Ms. Babin (without verbalizing) that their encounter was over and that she could go.

---

[6] This information is drawn from the plaintiff's deposition transcript and her sworn declaration, the only evidence in the summary judgment record.

Ms. Babin asked if it was okay to, or suggested that she would, speak to the other officer (Voltolina) who was still somewhere in the Big Lots parking lot. Blange then left the scene in his car. Ms. Babin went to speak to Voltolina, apparently to complain about being issued a summons, but Voltolina simply said, "That's not under my control."

Blange had issued Ms. Babin a criminal misdemeanor summons for violating of Jefferson Parish ordinance proscribing animal cruelty. Section 7-126 of the ordinance provides:

Sec. 7-126. – Cruelty in general.

(a) No person shall ill-treat, neglect, abandon, or cruelly treat an animal. No person shall unnecessarily or cruelly beat, mutilate, kill, torture, inflict injury, or abuse, or cause or procure to be cruelly beaten, mutilated, killed, tortured, injured, or abused, any animal or commit any act which under any other law constitutes cruel treatment, or fail to provide obviously necessary veterinary care.

(b) No animal shall be tethered as a means of stationary confinement; such stationary confinement by tethering shall be considered as cruel treatment.

(c) No animal shall be denied access to proper food, water, shelter, sanitary and safe environment, or proper veterinary care as is provided in section 7-16 and in Division 6 of Chapter 7.

(d) No domesticated animal shall be transported or carried in or upon any vehicle in a cruel, inhumane, or dangerous manner. Any animal transported in the open bed of a vehicle must be safely and securely located in a secure crate or carrier that is fastened to the bed of the vehicle to prevent the animal from jumping out of such vehicle or otherwise injuring itself. Any other such transport shall be considered animal neglect. **No animal shall be left inside a vehicle or in a**

**crate/carrier while unattended unless there is
reasonable containment during acceptable weather
conditions or the animal is provided proper temperature
control with regular monitoring conditions, including
but not limited to during American Kennel Club
sanctioned events.**

(e) When a person is charged with cruelty to animals,
said person's animal may be seized. Any animal so seized
shall be impounded in the custody of the Jefferson
Parish Animal Shelter or other location approved by the
Director of the Jefferson Parish Animal Shelter.

(f) All charges subject to Division 6 are subject to
the jurisdiction of the bureau of administrative
adjudication and also the Jefferson Parish District
Attorney's Office for criminal prosecution under
relative procedures and law.

(emphasis added). Two weeks after issuing the summons, Blange

drafted a report to support the citation.

On May 15, 2015, the Jefferson Parish District Attorney's

Office filed a bill of information in the First Parish Court for

the Parish of Jefferson, charging Ms. Babin with cruelty to animals

in violation of Code Section 7-126. Ms. Babin made three separate

court appearances and ultimately retained a criminal defense

attorney to defend her against the charge. On March 3, 2016, when

she and her attorney appeared for the trial, the charge was

dismissed.[7]

Shortly thereafter, Ms. Babin filed this civil rights lawsuit

under 42 U.S.C. § 1983, naming as defendants Jefferson Parish,

---

[7] She later had it expunged.

Deputy Micah P. Blange, in his individual capacity, and Newell Normand, in his official capacity as Sheriff of Jefferson Parish. Ms. Babin advances several claims. She alleges two claims against Blange: that her Fourth Amendment right to be free from unlawful seizure was infringed when Blange seized her without probable cause, subjecting her to false arrest;[8] and that Blange defamed her under Louisiana law.[9] Ms. Babin also alleges that Sheriff Normand is liable under the theory of respondeat superior for her

_____

[8] It is unclear whether Ms. Babin is alleging a false arrest claim under Louisiana law in addition to her Section 1983 claim based on a Fourth Amendment violation.

[9] Ms. Babin challenges as false and defamatory certain statements Blange wrote in his report supporting the summons:

- That he was "dispatched to . . . Big Lots [to respond to] several anonymous complaints calling 9-1-1"
- That the callers advised that "a dog had been left in a car with the windows up for approximately 20 minutes"
- That when he approached Ms. Babin, he "observed a full size dog in the front seat"
- That "the passenger side window was barley (sic) open and the window on the driver's side of the vehicle was not open at all"
- That he spoke "to several complainants, that wished to remain anonymous, who all advised Babin had been parked at the location for approximately 20 minutes, if not longer"
- That "[o]ne complainant stated that she was scared for the dog and even tried to open the door to Babin's vehicle, for fear the dog was suffering too much, but was unable to due to the door being locked"
- That "[t]he same complainant further stated that the dog was panting very heavily and appeared to be in some distress"
- That the temperature was in "the mid 80's"
- That Peyton Legion was nine years old.

Louisiana claims because Blange was acting in the course and scope of his employment. Finally, Ms. Babin alleges that Jefferson Parish is liable because Section 7-126 violates her right to substantive due process; the provision is unconstitutionally vague on its face, Ms. Babin alleges, because it defines neither "acceptable weather condition" nor "proper temperature control." Ms. Babin seeks three types of relief. First, Ms. Babin seeks declaratory relief with respect to the vagueness of the ordinance. Second, Ms. Babin seeks to enjoin the Parish and Sheriff Normand from enforcing the vague provision to prevent future deprivations of Ms. Babin's and other parties' rights to substantive due process. Finally, Ms. Babin seeks to recover money damages and attorney's fees from Jefferson Parish; she also seeks money damages from Blange for the emotional and mental distress, reputational damage, and attorney's fees she incurred defending the criminal charge.

Jefferson Parish moved for summary judgment dismissing the plaintiff's claims against it, and the plaintiff cross moved for partial summary judgment that certain terms in the animal cruelty ordinance are unconstitutionally vague. On January 11, 2017, the Court denied both motions "[b]ecause neither the Parish nor the plaintiff persuades the Court that the plaintiff may pursue a facial challenge to the ordinance, and because neither has

submitted any evidence that could serve as a factual predicate to analyze the plaintiff's 'as applied' challenge." <u>See</u> Order and Reasons dtd. 1/11/17.

Jefferson Parish now (again) seeks summary judgment insofar as the plaintiff advances a facial challenge to the ordinance. Jefferson Parish Sheriff Newell Normand and Deputy Micah Blange also seek summary judgment in their favor dismissing the plaintiff's Section 1983 claim on the grounds that: the alleged Fourth Amendment violation fails as a matter of law because the plaintiff was not "seized;" Deputy Blange is entitled to qualified immunity; and the plaintiff lacks standing to challenge prospective application of the ordinance.[10]

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). A genuine

---

[10] Deputy Blange does not appear to move for summary judgment dismissing the plaintiff's defamation claim.

dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); see also Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted) ("[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of a claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must adduce competent evidence, including but not limited to sworn affidavits and depositions, to buttress his claims. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). However, affidavits or pleadings which contradict earlier deposition testimony cannot create a genuine issue of material fact sufficient to preclude an entry of summary judgment. See S.W.S. Erectors, Inc. v. Infax,

Inc., 72 F.3d 489, 495 (5th Cir. 1996); Thurman v. Sears, Roebuck
& Co., 952 F.2d 128, 137 n. 23 (5th Cir. 1992).

In deciding whether a fact issue exists, courts must view the
facts and draw reasonable inferences in the light most favorable
to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007)
(citations omitted). Although the Court must "resolve factual
controversies in favor of the nonmoving party," it must do so "only
where there is an actual controversy, that is, when both parties
have submitted evidence of contradictory facts." Antoine v. First
Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation
marks and citation omitted).

## II.

Standing is a threshold issue and, yet, it is raised as an
apparent afterthought in only the law enforcement defendants'
motion. Sheriff Normand and Deputy Blange challenge Ms. Babin's
standing; their challenge is limited to her request for prospective
relief, but they merely reiterate the core component of the
standing requirement. Ms. Babin counters that she has satisfied
the requirements for Article III standing. Ms. Babin submits that
she does not merely allege a generalized citizens' interest in
good government as suggested by the defendants. Like each of the
issues presented by the parties' motions (whether the parties have

identified relevant issues, or, more often, not), this issue is inadequately briefed and -- if there is evidence in the record directed to supporting or undermining the factual predicate for standing -- neither side points it out.

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 133 S.Ct. 1138, 1146 (2013)("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court-jurisdiction to actual cases and controversies." <u>Spokeo, Inc. v. Robins</u>, 136 S.Ct. 1540, 1547 (2016)(citation omitted). "One element of the case-or-controversy requirement" -- standing to sue -- commands that a litigant must have standing to invoke the power of a federal court. <u>See Clapper</u>, 133 S.Ct. at 1146 (citation omitted); <u>see also National Federation of the Blind of Texas, Inc. v. Abbott</u>, 647 F.3d 202, 208 (5th Cir. 2011).

"To establish Article III standing," the Supreme Court has written on numerous occasions, "a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and

the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." Susan B. Anthony List v. Driehaus, 134 S.Ct. at 2341 (2014)(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes -- that the injury is *certainly* impending." Clapper, 133 S.Ct. at 1147 (citation omitted, emphasis in original). "Allegations of *possible* future injury are not sufficient." Id. (citation omitted, emphasis in original). Put differently, "an allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." Driehaus, 134 S.Ct. at 2341 (citing Clapper, 133 S.Ct. at 1147, 115, n.5).[11]

The party invoking federal jurisdiction, here, Ms. Babin, bears the burden of establishing standing as to each claim alleged. Clapper, 133 S.Ct. at 1146; DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006); Miss. State Democratic Party v. Barbour, 529

---

[11] Where threatened action by government is concerned, the Supreme Court "ha[s] held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" Driehaus, 134 S.Ct. at 2342 (citation omitted).

F.3d 538, 545 (5th Cir. 2008); <u>Doe v. Tangipahoa Parish School</u>
<u>Bd.</u>, 494 F.3d 494, 499 (5th Cir. 2007)("Standing to sue must be
proven, not merely asserted, in order to provide a concrete case
or controversy and to confine the courts' rulings within our proper
judicial sphere."). Critically, "each element must be supported
in the same way as any other matter on which the plaintiff bears
the burden of proof, *i.e.*, with the manner and degree of evidence
required at the successive stages of the litigation." <u>Driehaus</u>,
134 S.Ct. at 2342 (citing <u>Lujan</u>, 504 U.S. at 561).

To meet the irreducible constitutional minimum of standing to
seek injunctive relief, the plaintiff must establish that "[s]he
has sustained or is immediately in danger of sustaining some direct
injury as the result of the challenged official conduct." <u>City of</u>
<u>Los Angeles v. Lyons</u>, 461 U.S. 95, 101-02 (1983)(citations and
internal quotations omitted).[12] However, the plaintiff may not
simply rely on past injury to satisfy the injury requirement; she
must show a likelihood that she will be injured in the future.

_____

[12] No party here cites <u>Lyons</u>, which squarely addresses standing in
the prospective relief context. There, the Supreme Court held
that Lyons, who was placed in a chokehold by a LAPD officer during
a minor traffic stop, did not have standing to seek prospective
injunctive relief barring officers from indiscriminately using
chokeholds. That one chokehold episode did not translate into a
real and immediate threat of future injury and, therefore, the
past injury did not supply a predicate for prospective equitable
relief sought by Lyons. <u>Id.</u>

See O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)(holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief...if unaccompanied by any continuing present adverse effects).

Here, the plaintiff argues that she meets the irreducible constitutional minimum of standing: because she was detained, summoned, and prosecuted (her injury) by virtue of (and therefore traceable to) the allegedly inartfully drafted Jefferson Parish's animal cruelty ordinance and its unreasonable application to her, she submits that her injury will be redressed by a Court ruling (that the ordinance is unconstitutionally vague and that Deputy Blange violated her Fourth Amendment right) and an injunction issuing against its enforcement. It is clear in the record that Ms. Babin has supplied a predicate for retrospective relief for her detention, summons, and prosecution; however, the present state of the record does not permit a finding that Ms. Babin's past exposure to allegedly illegal conduct is accompanied by continuing, present adverse effects. And the Court will not speculate that Ms. Babin fears a repeat encounter with Jefferson Parish Sheriff's Office deputies.[13] Nevertheless, because the

[13] Nor will the Court advise as to whether or not this would suffice to demonstrate standing to seek prospective relief, if the record ultimately supports such an assertion by the plaintiff that she plans to drive Peyton Legion back to Big Lots and leave him in the

15

Court finds that the briefing and the record is likewise inadequate to resolve other issues raised by the parties' motions for summary judgment, the Court will allow supplemental briefing on the standing issue. Whether the plaintiff can satisfy her evidentiary burden on standing is one issue to be addressed and, if she cannot, the parties must address which claims fail for her lack of standing to seek prospective relief. To be sure, if Ms. Babin lacks standing, the Court lacks subject matter jurisdiction to entertain a request for prospective relief.

## III.

Title 42, U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the

---

car while she buys dog food. See Kolender v. Lawson, 461 U.S. 352, 356 n.3 (1983)(noting that no party had challenged the plaintiff's standing to seek prospective relief, but observing that the plaintiff had been stopped 15 times in two years pursuant to the challenged California statute, thus finding "there is a 'credible threat' that [the plaintiff] might be detained again [under the statute]."). To have standing to seek prospective relief, Ms. Babin must show a genuine, credible threat of future injury, a realistic likelihood that she could be detained and prosecuted for future violations of the animal cruelty ordinance. Lyons, 461 U.S. at 104-06; Ellis v. Dyson, 421 U.S. 426 (1975). "The injury or threat of injury must be both 'real and immediate, not 'conjectural' or 'hypothetical.'" O'Shea, 414 U.S. at 494.

> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured.

Because Section 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability." Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997)(citation omitted). To establish § 1983 liability, the plaintiff must satisfy three elements:

> (1) deprivation of a right secured by the U.S.
>     Constitution or federal law,
>
> (2) that occurred under color of state law, and
>
> (3) was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

Ms. Babin's Section 1983 claims are based on alleged deprivations of two constitutional rights: (1) the right to be free from unreasonable seizure secured by the Fourth Amendment, which she says Deputy Blange violated when Blange arrested her without probable cause; and (2) the right to due process secured by the Fourteenth Amendment, of which she says Jefferson Parish deprived her because the animal cruelty ordinance is so vague that it failed to give her, and fails to give ordinary people, fair

17

notice of the conduct it punishes and that is so standardless that it invites arbitrary enforcement.  Deputy Blange seeks summary judgment on his defense of qualified immunity,[14] and the Parish seeks summary judgment that Ms. Babin cannot demonstrate that the ordinance was unconstitutionally vague.

IV.

When a plaintiff seeks money damages from government officials for alleged violations of constitutional or statutory rights, officials sued in their individual capacities may invoke the defense of qualified immunity.  Because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam).  Once the defense of qualified immunity is "properly raised," the burden of negating the defense shifts to the plaintiff.  See Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009)(citation omitted); Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)("To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere

---

[14] Deputy Blange and Sheriff Normand also move for summary judgment that the plaintiff has not proved a constitutional deprivation, but the analysis of this ground overlaps with, and is doomed by, the same deficient briefing and submission bearing on the qualified immunity defense.

allegations.'"); see also Pierce v. Smith, 117 F.3d 866, 872 (5th Cir. 1997)("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.").

"Qualified immunity shields government officials from civil damages liability," the U.S. Supreme Court has reiterated, "unless the official violated a statutory or constitutional right that was clearly established that the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012)(citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)(This doctrine protects government officials against individual civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"). "[T]he qualified immunity standard 'gives

ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008)(citations omitted); see also Bazan v. Hidalgo County, 246 F.3d 481, 488 (5th Cir. 2001)("even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity")(citation omitted); see also Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995)(observing that "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law.").

Put simply, a public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the official's conduct violates a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. al-Kidd, 563 U.S. at 735 (citation omitted).[15] Although

---

[15] In resolving a government official's qualified immunity defense, courts have traditionally applied the two-prong process articulated in Siegert v. Gilley, 500 U.S. 226 (1991) and confirmed by the Supreme Court again in Saucier v. Katz, 533 U.S. 194 (2001). First, the Court must determine whether the plaintiffs have shown a violation of a constitutional right. Id. at 201. The second inquiry requires the Court to consider "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009)(holding that the sequence identified in Saucier is not mandatory; courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first).

the Supreme Court has left to the district court's discretion the sequence for undertaking these two inquiries, the Supreme Court has increasingly indicated a preference for first considering whether a purported right was clearly established by prior case law "without resolving the often more difficult question whether the purported right exists at all." See al-Kidd, 563 U.S. at 735 ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"); see also Reichle, 132 S.Ct. at 2093 ("This approach comports with our usual reluctance to decide constitutional questions unnecessarily."); see also Camreta v. Greene, 563 U.S. 692, 705 (2011)(observing that "our usual adjudicatory rules suggest that a court *should* forbear resolving this issue")(emphasis in original); see also Pearson, 555 U.S. at 238-39 (listing circumstances in which courts might be best served to bypass the first step of the Saucier process, such as "when qualified immunity is asserted at the pleadings stage, the precise factual basis for the plaintiff's claim or claims [is] hard to identify").

"A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Hanks v. Rogers, 853

F.3d 738, 746-47 (5th Cir. 2017) (quoting <u>White v. Pauly</u>, 137 S.Ct. 548, 551 (2017)). "[C]learly established law must be 'particularized' to the facts of the case [and] should not be defined 'at a high level of generality.'" <u>Id.</u> (citations omitted). "In other words," the Fifth Circuit recently explained, "outside of an obvious case, the law is only clearly established if a prior case exists where an officer acting under similar circumstances ...was held to have violated the Fourth Amendment." <u>Id.</u> (citation and internal quotation omitted).

Ms. Babin claims that Deputy Blange violated her Fourth Amendment right to be free from false arrest. Tailored to the wrongful arrest context:

> When an individual asserts a claim for wrongful arrest, qualified immunity will shield the defendant officer[] from suit if a reasonable officer could have believed [the arrest at issue] to be lawful, in light of clearly established law and the information the [arresting] officer[] possessed. Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. Thus, a qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause. On the other hand, if officers of reasonable competence could disagree on this issue, immunity should be recognized.

<u>Mendenhall v. Riser</u>, 213 F.3d 226, 230 (5th Cir. 2000)(citations and internal quotations omitted).

The Fourth Amendment guarantees "the right of the people to be secure in their persons ... against unreasonable searches and seizures ... and no warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The Fourteenth Amendment extends this protection against "unreasonable searches and seizures" to the states. Dunaway v. New York, 442 U.S. 200, 207 (1979). "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Heien v. North Carolina, 135 S.Ct. 530, 536 (2014)(quoting Riley v. California, 134 S.Ct. 2473, 2482 (2014)).

Central to a Section 1983 claim for wrongful arrest is a "seizure" of a person. California v. Hodari D., 499 U.S. 621, 624 (1991)("[T]he Fourth Amendment's protection against 'unreasonable ... seizures' includes seizure of the person."). A determination of whether an unreasonable seizure has occurred, as with all Fourth Amendment issues, may only be resolved by considering the particular facts of the case. "A person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." Id. at 627-28. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally

applied." <u>Brendlin   v.   California</u>,   551   U.S.   249,   254
(2007)(citations and internal quotation marks omitted).

    In support of his qualified immunity defense, Deputy Blange
submits that "a criminal summons without custodial arrest or
accompanying restrictions on an individual's liberty, coupled with
a voluntary appearance...does not amount to seizure."  The sound
legal premise of this argument aside, the plaintiff's sworn
deposition testimony squarely removes the facts of this case from
the law invoked by Blange.  The plaintiff stated that Deputy Blange
"drove up behind [Ms. Babin's parked] car" and blocked her into
the parking spot before proceeding to demand to see her driver's
license and question her identity and business at Big Lots.[16]
Standing alone, as it does on this sparse record, this fact defeats
Deputy Blange's suggestion that Ms. Babin merely received a summons
and therefore was not seized within the meaning of the Fourth
Amendment.  <u>See</u> <u>United States v. Jones</u>, 678 F.3d 293, 298-99 (4th
Cir. 2012)(considering the totality of the circumstances and
determining that, when an officer who is armed and in uniform
"blocks a defendant's car from leaving the scene ... the officer
demonstrates a greater show of authority than does an officer who

---

[16] Curiously, the transcript from the plaintiff's deposition (in
which this fact appears) was submitted by Deputy Blange in support
of his motion in which he argues a legal proposition divorced from
the facts contained in the transcript.

just happens to be on the scene and engages a citizen in conversation," a reasonable person would not have felt free to leave). The implications of Deputy Blange's failure to address, acknowledge, or respond to the plaintiff's arguments raised in opposition to his motion (in which she features the very evidence Blange submitted into this record that is suggestive of a Fourth Amendment seizure) are unclear. To be sure, the plaintiff has the burden to defeat a "properly raised" qualified immunity defense. The Court assumes without deciding, however, that attorney professional responsibility demands that attorneys representing individuals invoking qualified immunity defenses, like all attorneys, have the professional obligation to advance arguments in support of their defenses, tailored to the facts of the case, and to submit any evidence that would assist the Court in resolving qualified immunity defenses.

This case epitomizes the practical difficulties presented when the Court is asked to resolve an assertion of qualified immunity that is not only poorly briefed, but also where there is no factual predicate in the record to support an assertion of immunity. If Deputy Blange's position is that he is immune from suit here because no custodial arrest occurred, he nevertheless fails to identify any facts that undermine the plaintiff's characterization that she was seized within the meaning of the

Fourth Amendment. Equally troubling, neither side briefs what appears to this Court to be a threshold issue: whether, assuming as the only record evidence demonstrates, in blocking Ms. Babin's car in her parking spot for a few minutes to ask her some questions and issue a summons, Deputy Blange merely detained Ms. Babin for investigatory purposes such that the reasonable suspicion framework for a <u>Terry</u> stop applies to his actions, or, instead, whether the facts are more indicative of a *de facto* arrest such that probable cause – or, in the qualified immunity context, arguable probable cause -- must be proved to justify the seizure. See <u>United States v. Sharpe</u>, 470 U.S. 675, 685 (1985)("Admittedly [Supreme Court precedent] may in some instances create difficult line-drawing problems in distinguishing an investigative stop from a de facto arrest.").[17] Regardless which label best captures what occurred here, the reasonable suspicion or probable cause

---

[17] There is no "litmus-paper test for distinguishing a consensual encounter from a seizure or for determining when a seizure exceeds the bounds of an investigative stop." <u>Florida v. Royer</u>, 460 U.S. 491, 498 (1983)("there will be endless variations in the facts and circumstances, so much variation that it is unlikely that the courts can reduce to a sentence or paragraph a rule that will prove the unarguable answers to the question whether there has been an unreasonable search or seizure in violation of the Fourth Amendment."). Again, underscoring the indispensability of a developed record to facilitate characterizing and resolving Fourth Amendment issues.

determination are both fact-driven inquires that this Court is presently ill-equipped to tackle.

An attempt to resolve the qualified immunity defense without the benefit of adversarial briefs and without a developed summary judgment record falls flat. To withstand summary judgment in favor of Deputy Blange on his qualified immunity defense, Ms. Babin must demonstrate that her arrest (if it was an arrest and not an investigative stop) was unlawful (that is, not based on probable cause) and that the unlawfulness of Blange's conduct in arresting her was clearly established (that is, that no reasonable officer would have believed that there was probable cause to arrest her for leaving her dog unattended in her car without reasonable containment during acceptable weather conditions or proper temperature control). "Probable cause and the ensuing qualified immunity analysis turn on [the arresting officer's] reasonable beliefs and knowledge, including information received from eye witnesses." See Bone v. Dunnaway, 657 Fed.Appx. 258, 261 (5th Cir. 2016)(citations omitted).

> Probable cause to arrest depends upon whether, at the
> moment the arrest was made...the facts and circumstances
> within (the arresting officers') knowledge and of which
> they had reasonably trustworthy information were
> sufficient to warrant a prudent man in believing that
> the (suspect) had committed or was committing an
> offense.

<u>Adams v. Williams</u>, 407 U.S. 143, 148 (1972)(citing <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)). If Deputy Blange had probable cause to seize Ms. Babin, then Ms. Babin's wrongful seizure claim fails.

On this record, the qualified immunity issue is patently academic. Given that probable cause and the qualified immunity determination turn on fact-intensive inquiries, and there is no evidence in the record to inform the Court as to the information Blange had in arresting Babin, summary judgment is premature. There are no facts in the record indicating the facts and circumstances within Deputy Blange's knowledge at the time he "seized" Babin. Although Ms. Babin alludes in her deposition testimony to a 911 call made by a complaining witness and also alludes to the fact that there were at least two complaining witnesses who spoke to Deputy Blange,[18] there is nothing in the record to indicate what was said on the 911 call or what these "eyewitnesses" told Blange when he arrived at Big Lots to investigate.[19] Having not been advised as to the totality of the

_____

[18] In issuing the summons, Babin says Blange told her "it's two against one."

[19] The record reveals only: Blange arrived at Big Lots after dispatch received a call from a concerned citizen regarding a dog that had been left alone in a car. Upon arriving on scene, he went to speak with the complaining witness and another woman. The Court cannot simply speculate that Blange relied on complaining witness descriptions of the potential violation of the animal

circumstances confronting Deputy Blange, there is no factual predicate to enable this Court to resolve whether Blange had the requisite probable cause or reasonable suspicion to render Babin's seizure "reasonable" under the Fourth Amendment.

The Court's attempt to resolve the clearly established prong of the qualified immunity analysis fares no better. This inquiry also depends on historical facts, in particular, on what happened in factually similar circumstances. "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix v. Luna, 136 S.Ct. 305, 308 (2015). "The relevant inquiry is whether existing precedent placed the conclusion that [the arresting officer] acted unreasonably in these circumstances 'beyond debate.'" Id. at 309 (citation omitted). This Court can hardly determine whether it was clearly established that the Fourth Amendment prohibited Deputy Blange's conduct in the situation he confronted, when what he confronted is absent from the summary judgment record. See Tolan v. Cotton, 134 S.Ct. 1861, 1866 (2014)(noting that the judge's function at summary judgment is to view the facts in the light most favorable to the party asserting the injury and to determine whether there is a

---

cruelty ordinance; the Court must view what little evidence there is in the light most favorable to Babin.

genuine issue for trial). Deputy Blange's request for judgment as a matter of law on his defense of qualified immunity must be denied without prejudice.[20]

To withstand Deputy Blange's qualified immunity defense, assuming the parties submit the requisite evidence, the plaintiff must identify a case where an officer acting under similar circumstances as Deputy Blange was held to have violated the Fourth Amendment. In addressing the clearly established prong, the parties should take care not to define the qualified immunity inquiry too abstractly and, in attempting to identify clearly established law, the plaintiff should identify factually similar cases that speak to the circumstances of this case. See White v. Pauly, 137 S.Ct. 548, 552 (2017)(noting the frequency with which the Court has reversed federal courts in qualified immunity cases and finding that "[t]he panel majority misunderstood the 'clearly established' analysis" in that it "failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment."); see also City and County of San Francisco, Calif. V. Sheehan, 135 S.Ct. 1765, 1776 (2015)("Qualified immunity is no immunity at all if 'clearly

---

[20] Sheriff Normand's request for judgment as a matter of law was derivative of Deputy Blange's and, thus, it is likewise denied without prejudice.

30

established' law can simply be defined as the right to be free from unreasonable searches and seizures."); see also Tolan, 134 S.Ct. at 1866 ("courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions"); see also Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2094 (2012)("the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official")(internal quotation marks and citations omitted).

V.

Ms. Babin's Section 1983 claim against the Parish must be analyzed in accordance with the Monell framework.[21] Municipalities are "persons" within the meaning of Section 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). But, it has been cautioned, "[t]hey are liable only for their own acts and not those attributed to them by principles of *respondeat superior*." Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004)(citing Monell, 436 U.S. at 691-92). Imposition of Section 1983 liability against a municipality under Monell is appropriate in the limited circumstance of when a constitutional tort is caused through the

---

[21] Jefferson Parish neglects to mention this governing framework.

execution of a policy or custom of the municipality. See <u>Bowen v.</u>
<u>Watkins</u>, 669 F.2d 979, 989 (5th Cir. 1982)(citation omitted). "[A]
local government may not be sued under § 1983 for an injury
inflicted solely by its employees or agents. Instead, it is when
execution of a government's policy or custom ... inflicts the
injury that the government as an entity is responsible under §
1983." <u>Monell</u>, 436 U.S. at 694.

To determine whether municipal liability attaches, the Court
looks to whether unconstitutional conduct is directly attributable
to the municipality through some official custom or policy;
"isolated unconstitutional actions by municipal employees will
almost never trigger liability." See <u>Piotrowski v. City of</u>
<u>Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001)(citations omitted);
<u>Bolton v. City of Dallas</u>, 541 F.3d 545, 548 (5th Cir.
2008)(citation omitted)("The municipality must cause the
constitutional tort, which occurs 'when execution of a
government's policy or custom, whether made by its lawmakers or by
those whose edicts or acts may fairly be said to represent official
policy, inflicts the injury.'"). Indeed, the rules for imposing
municipal liability are well-settled; proof of three elements is
vital: (1) a policy maker; (2) an official policy or custom; and
(3) causation: a violation of constitutional rights whose "moving
force" is the policy or custom. <u>Piotrowski</u>, 237 F.3d at 578

(citing <u>Monell</u>, 436 U.S. at 694).[1] Official municipal policy, the U.S. Supreme Court has observed, "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>See</u> <u>Connick v. Thompson</u>, 131 S.Ct. 1350, 1359 (2011)(citations omitted)("These are 'action[s] for which the municipality is actually responsible.'"). The Fifth Circuit has defined an official policy for Section 1983 purposes as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

<u>Bennett v. City of Slidell</u>, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*).

---

[1] Proof of these three elements is necessary "to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 471 (5th Cir. 1999) (citation omitted).

Babin alleges that her arrest for animal cruelty violated her Fourteenth Amendment right to due process because the animal cruelty ordinance is so vague that it failed to give her, and fails to give ordinary people, fair notice of the conduct it punishes and that is so standardless that it invites arbitrary enforcement. The Parish seems to contend that Babin fails to demonstrate that the ordinance is vague on its face. The Parish also seems to suggest, in a footnote, that it would not be the proper defendant to answer any as-applied challenge to the ordinance. The Parish misapprehends the law and deals a blow to common sense in advancing the second argument.

The Fourteenth Amendment provides that "[n]o person shall...be deprived of life, liberty, or property without due process of law." U.S. Const. amend. XIV. "Vagueness doctrine is an outgrowth of the Due Process Clause." United States v. Williams, 553 U.S. 285, 304 (2008). Due process requires that statutes providing for criminal prosecution be drafted "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983); Johnson v. United States, 135 S.Ct. 2551, 2557-58 (2015); Munn v. City of Ocean Springs, Miss., 763 F.3d 437, 439 (5th Cir. 2014)("The Due Process Clause requires that a law provide

sufficient guidance such that a man of ordinary intelligence would understand what conduct is being prohibited.").

An ordinance is unconstitutionally void for vagueness under the due process clause of the Fourteenth Amendment if its lack of definitive standards either (1) fails to apprise persons of ordinary intelligence fair notice of the prohibited conduct, or (2) encourages arbitrary and discriminatory enforcement. See Williams, 553 U.S. at 304. The Fifth Circuit has instructed that the Court "must strike down [an] ordinance if...it does not sufficiently define the line between legal and illegal conduct." Munn, 763 F.3d at 439.

The Supreme Court has instructed that the Court, in considering a facial vagueness challenge,

> should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95 (1982); see also Holder v. Humanitarian Law Project, 561 U.S. 1, 18-19 (2010). "In evaluating a facial challenge to a state law, a federal court must, of course, consider

any limiting construction that a state court or enforcement agency has proffered." Id. (citing Grayned v. City of Rockford, 408 U.S. 104, 110 (1972)). These principles fail to resolve what the Court identified previously as an impediment to summary judgment when cross motions were pending on the plaintiff's facial challenge to the animal cruelty ordinance.

The parties (for a second time) fail to brief the ambiguity bearing on whether facial vagueness challenges are limited to challenges based on the First Amendment. At least the Second Circuit has noted that there is "confusion in the law" regarding "[w]hether a facial void-for-vagueness challenge can be maintained when . . . a challenge is not . . . based on the First Amendment." Dickerson v. Napolitano, 604 F.3d 732, 743 & n.10 (2d Cir. 2010).[22] The Second Circuit goes on to observe that there are two potential standards governing non-First Amendment based vagueness challenges. Id. at 743-44 (declining to resolve which standard should apply because the plaintiffs would not be permitted to bring a facial challenge under either). The first potential standard –

---

[22] That the Supreme Court has observed the following suggests that only an as-applied vagueness challenge may be made when the challenged statute does not implicate the First Amendment: "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." See, e.g., United States v. Mazurie, 419 U.S. 544, 714 (1975).

- that such challenges are permitted only when "no set of circumstances exists under which the [law] would be valid" -- as a practical matter "eliminates facial challenges outside the First Amendment context that could not also be brought as an as-applied challenge." Id. As for the second potential standard, the Second Circuit determined that the Supreme Court in Morales "suggest[ed] that facial challenges are permissible outside of the First Amendment context, but . . . only in the presence of a constitutionally-protected right." Id. (citing City of Chicago v. Morales, 527 U.S. 41, 53 (1999)).

Like the Second Circuit, the Court finds that, regardless of which standard applies to the plaintiff's facial challenge, her facial vagueness challenge must be dismissed. If the first standard governs, then Ms. Babin is restricted to an as-applied challenge; if the second standard governs, then Ms. Babin cannot succeed on her facial vagueness challenge because she has identified no fundamental constitutional right infringed by the animal cruelty ordinance.

Although the plaintiff's facial challenge to the ordinance's vagueness must be dismissed, the Court is compelled to note Jefferson Parish did not move for summary judgment as to any as-applied vagueness challenge advanced by Ms. Babin. The Parish

seems to suggest that it is not the proper defendant to an as-applied vagueness challenge, arguing "[w]hether an ordinance as applied to Babin under the particular circumstances as alleged and/or to be proven at trial deprived Babin of her constitutional rights is not what is before this Court as to Defendant the Parish of Jefferson." It offers no argument or legal citation in support of this assertion. If indeed it is suggesting that it is not the proper defendant to answer to Ms. Babin's as-applied vagueness challenge, the Parish's suggestion defies commonsense and misapprehends municipal liability.[23] There can be no dispute that the Jefferson Parish animal cruelty ordinance reflects the official policy of the municipality. See Connick v. Thompson, 563 U.S. 51, 61 (2011)("[o]fficial municipal policy" includes the "decisions of a government's lawmakers"); Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984)(official policy for Section 1983 municipal liability purposes includes an ordinance passed by the municipality's law makers). If the ordinance is unconstitutional as applied to Ms. Babin's conduct, there is unconstitutional conduct attributable to the Parish, which may be

---

[23] The argument is tantamount to suggesting that one may never pursue an as-applied vagueness challenge, considering that a police officer cannot possibly be the appropriate defendant to answer for the sins of an unconstitutional parish ordinance.

subject to liability under Section 1983.[24]  See Galbreath v. City

of Oklahoma City, 568 Fed.Appx. 534, 538-39 (10th Cir. 2014)(citing

Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1279 (10th

Cir. 2009)(if ordinances are unconstitutional as applied to the

plaintiff, the liability falls on the city)).

Thus, insofar as the plaintiff alleges that the ordinance is

unconstitutionally vague as applied to her, that claim remains

viable.  Even if the Court wanted to take up the issue, Jefferson

Parish failed to heed this Court's prior admonition regarding

placing evidence in the record that would facilitate a ruling on

the as-applied challenge.  See Order and Reasons dtd. 1/11/17.

Because the determination as to whether the Parish's animal cruelty

ordinance is unconstitutionally vague as applied to Ms. Babin is

necessarily tethered to the factual context in which the ordinance

was applied, on this record, summary judgment is patently

inappropriate.

Accordingly, for the foregoing reasons, IT IS ORDERED: that

the Parish's motion for summary judgment is GRANTED insofar as it

_____

[24] The Court need not address other issues that have not been
properly raised, such as what becomes of the plaintiff's vagueness
challenge if she lacks standing for prospective relief, or if it
is later determined that Deputy Blange did not violate her
constitutional right to be free from unreasonable seizure (that
is, if the Heller rule applies, see City of Los Angeles v. Heller,
475 U.S. 796, 799 (1986)).

seeks dismissal of the plaintiff's facial vagueness challenge (but the plaintiff's as-applied challenge, if any, remains viable against the Parish), and the law enforcement defendants' motion for summary judgment is DENIED without prejudice.  Because the Court was unable to resolve issues that should be resolved prior to trial, in particular, standing for prospective relief and qualified immunity, IT IS FURTHER ORDERED: that the pretrial conference and trial are hereby continued, to be reset by the Court.  Any properly supported motions for summary judgment must be filed within 30 days of this Order and Reasons.  All counsel must be mindful of 28 U.S.C. § 1927.

New Orleans, Louisiana, May 19, 2017

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE