UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


CATHERYN BABIN                                    CIVIL ACTION

v.                                                NO. 16-2954

THE PARISH OF JEFFERSON, ET AL.                   SECTION "F"


ORDER AND REASONS

Before the Court are two motions: (1) Jefferson Parish's
motion for summary judgment; (2) Jefferson Parish Sheriff Deputy
Micah Blange's and Sheriff Newell Normand's motion for summary
judgment.  For the reasons that follow, the Parish's motion is
GRANTED in part (insofar as it is entitled to judgment as a matter
of law dismissing the plaintiff's claim for prospective relief for
lack of standing) and DENIED in part (insofar as it fails to
demonstrate entitlement to judgment as a matter of law as to the
plaintiff's as-applied vagueness challenge), and the law
enforcement defendants' motion is GRANTED in part (insofar as
Deputy Blange is entitled to qualified immunity on the plaintiff's
Section 1983 claim) and DENIED in part (because the defendants
fail to adequately brief the plaintiff's state law false arrest
claim).

**Background**

On April 11, 2015, shortly after noon in Jefferson Parish, Louisiana, the temperature was in the low 70s with overcast skies.[1] Catheryn Babin was driving her two-door Mini-Cooper convertible. With her was her two-year-old Catahoula/Labrador mix, Peyton Legion, a trained service dog. Ms. Babin and Peyton Legion were on their way home from a senior citizen center, where Peyton Legion had spent the morning working with residents suffering from Alzheimer's disease. On the way from the center to her house, Ms. Babin stopped at Big Lots on Veterans Boulevard in Jefferson Parish to buy dog food. Leaving the windows rolled down, the car doors unlocked, and the convertible top partly retracted to expose the front seats, Ms. Babin went into the store; Peyton Legion waited in the car.[2]

---

[1] The facts are summarized in the light most favorable to Ms. Babin.
[2] Whether or not the convertible top was retracted is disputed: Deputy Blange testified that the convertible top was closed, but Ms. Babin has testified that the convertible top was partially open, exposing the front two seats. There also appears to be some dispute concerning whether and when the windows were rolled down and, if so, how far. Deputy Blange testified that the window on the passenger side was rolled up and that if the window on the driver's side was down, it may have been cracked only a couple of inches, he was not able to see it from his vantage point on the passenger side of the car. He stated that Ms. Babin placed her groceries inside the car and rolled down the windows after she shopped at Big Lots. Because there is a dispute in the record, the Court takes the plaintiff's sworn version as true for the purposes of the pending motions.

Meanwhile, at 12:12 p.m., while Ms. Babin was inside Big Lots and her dog was unattended in her car, a woman named Ashley McMurry[3] called the Jefferson Parish 911 operator to complain that a dog was left unattended for 10 minutes. Ms. McMurry apparently told the operator that the dog had been locked in a car for at least 10 minutes, that the dog was panting and looked "uncomfortable," although she also told the operator that the windows were down, it was "not that hot," and that the dog did not appear to be in distress. Jefferson Parish Sheriff's Office dispatched a law enforcement officer to the scene.

When Ms. Babin exited Big Lots, Ms. McMurry confronted her, complaining that the dog was left alone in the car. Ms. Babin says that she showed Ms. McMurry that the door was unlocked and that, as soon as she opened the car door, Peyton Legion came to Ms. Babin and he was then on-leash at Ms. Babin's side in the parking lot. Nevertheless, Ms. McMurry continued to complain and berate Ms. Babin.

At about 12:25 p.m., Jefferson Parish Sheriff's Office Deputy Micah Blange, in full police uniform, arrived on the scene in his

---

[3] Ashley McMurry is identified in the plaintiff's complaint as the complaining witness in the Big Lots parking lot, but the parties now identify her by her married name, Ashley McWhirter. No affidavit or deposition transcript or any statement by this complaining witness is of record.

marked vehicle.[4]  He first spoke with an unidentified individual as well as Ms. McMurry (whom "hurried after" Blange when he pulled into the parking lot).[5]  Soon thereafter, another Jefferson Parish Sheriff's deputy, Michael Voltolina, Jr., arrived at Big Lots. Unlike Blange, Voltolina drove up to where Ms. Babin had parked, examined Ms. Babin's car, and explained to her that deputies were required to come to the scene to investigate, but that he did not see cause for issuing a summons.[6]  After Voltolina left Ms. Babin, Deputy Blange drove over to where her car was parked and where she was standing next to her car with Peyton Legion.  Blange parked his police cruiser to the rear and perpendicular to Ms. Babin's vehicle, blocking her into the parking space.  Ms. Babin submits

---

[4] Deputy Blange and Ms. Babin dispute whether or not Ms. Babin had returned to her vehicle prior to his arrival.

[5] Ms. Babin could not hear what was being discussed among the complaining witnesses and Deputy Blange.

[6] This information is drawn from the plaintiff's deposition transcript and her sworn declaration.  Deputy Blange testified that he spoke with both complaining witnesses near the passenger side of Ms. Babin's car and that Ms. Babin arrived at her car after he had arrived on the scene and had parked behind her.  Deputy Blange testified that he had observed Peyton Legion unattended inside the vehicle before Ms. Babin emerged from Big Lots; Deputy Blange testified that the dog was moving back and forth from the front passenger seat to the rear seat, panting, appearing "nervous," and "seemed to be in somewhat distress."  When he arrived at Big Lots, Deputy Blange testified, he spoke to both complaining witnesses near the passenger side of Ms. Babin's car and after about five minutes of speaking with them, Ms. Babin exited Big Lots, went to the driver's side of her car, where she deposited her groceries and rolled down the windows, at which time Deputy Blange observed that the complaining witnesses "express[ed] their displeasure [toward Ms. Babin for] her leaving the dog in the vehicle."

that Blange did not exit his vehicle, but instead called Ms. Babin over to his car, telling her "I need to see your driver's license," which she retrieved from her car and handed to him. Blange then asked her a couple questions regarding her identity, and then asked why she had not left her dog at home.[7] Ms. Babin explained that she and Peyton Legion were on their way home from visiting a senior center.[8]

Without more, according to Ms. Babin, Blange told Ms. Babin that he was issuing her a criminal misdemeanor summons. Ms. Babin asked why, to which Blange responded that it was "two against one" (ostensibly referring to Ms. McMurry and the other concerned citizen). After completing the summons, Blange exited his car to hand it over to Ms. Babin. He then returned her driver's license, and got back in his car. At that point, Blange indicated to Ms. Babin (without verbalizing) that their encounter was over and that she could go. Ms. Babin asked if it was okay to, or suggested that she would, speak to the other officer (Voltolina) who was

---

[7] Deputy Blange testified that he "got her side of the story" but that it was his "opinion that the dog was in enough distress and that the period of time that I understood from the witnesses that the dog was in danger, at that point I decided to issue her a misdemeanor summons in lieu of making a physical arrest." He went on to say, "You know, I don't believe her intention was to harm the dog. However, that doesn't negate, you know, the situation that she placed the dog in."

[8] According to Deputy Blange's testimony, Ms. Babin told him that she could not leave her dog at home because he suffered from separation anxiety.

still somewhere in the Big Lots parking lot.  Blange then left the scene in his car.  Ms. Babin went to speak to Voltolina, apparently to complain about being issued a summons, but Voltolina simply said, "That's not under my control."

Blange had issued Ms. Babin a criminal misdemeanor summons for violating of Jefferson Parish ordinance proscribing animal cruelty.  Section 7-126 of the ordinance provides:

Sec. 7-126. - Cruelty in general.

(a)  No person shall ill-treat, neglect, abandon, or cruelly treat an animal. No person shall unnecessarily or cruelly beat, mutilate, kill, torture, inflict injury, or abuse, or cause or procure to be cruelly beaten, mutilated, killed, tortured, injured, or abused, any animal or commit any act which under any other law constitutes cruel treatment, or fail to provide obviously necessary veterinary care.

(b)  No animal shall be tethered as a means of stationary confinement; such stationary confinement by tethering shall be considered as cruel treatment.

(c)  No animal shall be denied access to proper food, water, shelter, sanitary and safe environment, or proper veterinary care as is provided in section 7-16 and in Division 6 of Chapter 7.

(d)  No domesticated animal shall be transported or carried in or upon any vehicle in a cruel, inhumane, or dangerous manner. Any animal transported in the open bed of a vehicle must be safely and securely located in a secure crate or carrier that is fastened to the bed of the vehicle to prevent the animal from jumping out of such vehicle or otherwise injuring itself. Any other such transport shall be considered animal neglect. **No animal shall be left inside a vehicle or in a crate/carrier while unattended unless there is reasonable containment during acceptable weather conditions or the animal is provided proper temperature control with regular monitoring conditions, including but not limited to during American Kennel Club sanctioned events.**

6

> (e) When a person is charged with cruelty to animals, said person's animal may be seized. Any animal so seized shall be impounded in the custody of the Jefferson Parish Animal Shelter or other location approved by the Director of the Jefferson Parish Animal Shelter.
>
> (f) All charges subject to Division 6 are subject to the jurisdiction of the bureau of administrative adjudication and also the Jefferson Parish District Attorney's Office for criminal prosecution under relative procedures and law.

(emphasis added). Two weeks after issuing the summons, Blange drafted a report to support the citation.

On May 15, 2015, the Jefferson Parish District Attorney's Office filed a bill of information in the First Parish Court for the Parish of Jefferson, charging Ms. Babin with cruelty to animals in violation of Code Section 7-126. Ms. Babin made three separate court appearances and ultimately retained a criminal defense attorney to defend her against the charge. On March 3, 2016, when she and her attorney appeared for the trial, the charge was dismissed.[9]

Shortly thereafter, Ms. Babin filed this civil rights lawsuit under 42 U.S.C. § 1983, in which she advanced several claims against Jefferson Parish, Jefferson Parish Deputy Micah P. Blange, in his individual capacity, and Newell Normand, in his official

---

[9] She later had it expunged.

capacity as Sheriff of Jefferson Parish.[10]    Ms. Babin alleges

three claims against Blange: that her Fourth Amendment right to be

free from unlawful seizure was infringed when Blange seized her

without probable cause, subjecting her to false arrest; that Blange

defamed her under Louisiana law by misrepresenting facts he wrote

in a report to support the summons issued; and that Blange

subjected her to false arrest under Louisiana law.  Ms. Babin also

alleges that the sheriff is liable under the theory of respondeat

superior for her Louisiana claims because Blange was acting in the

course and scope of his employment.  Ms. Babin alleges that

Jefferson Parish is liable because Section 7-126 violates her right

to substantive due process; the provision is unconstitutionally

vague on its face, Ms. Babin alleges, because it defines neither

"acceptable weather condition" nor "proper temperature control."

Ms. Babin seeks three types of relief.

Ms. Babin seeks declaratory relief with respect to the

vagueness of the ordinance.  Second, Ms. Babin seeks to enjoin the

Parish and Sheriff Normand from enforcing the vague provision to

prevent future deprivations of Ms. Babin's and other parties'

rights to substantive due process.  Finally, Ms. Babin seeks to

recover money damages and attorney's fees from each of the

---

[10] Since this litigation was instituted, Newell Normand stepped
down as Sheriff of Jefferson Parish Sheriff's Office.  No party
has moved to substitute the interim sheriff.

defendants for the emotional and mental distress, reputational damage, and attorney's fees she incurred defending the criminal charge.

Jefferson Parish moved for summary judgment dismissing the plaintiff's claims against it, and the plaintiff cross moved for partial summary judgment that certain terms in the animal cruelty ordinance are unconstitutionally vague. On January 11, 2017, the Court denied both motions "[b]ecause neither the Parish nor the plaintiff persuades the Court that the plaintiff may pursue a facial challenge to the ordinance, and because neither has submitted any evidence that could serve as a factual predicate to analyze the plaintiff's 'as applied' challenge." See Order and Reasons dtd. 1/11/17.[11] Jefferson Parish then filed a second motion for summary judgment to dismiss the plaintiff's facial challenge to the ordinance, and the Sheriff and Deputy Micah Blange, again, moved for summary judgment in their favor dismissing the plaintiff's Section 1983 claim on the grounds that: the alleged Fourth Amendment violation fails as a matter of law because the plaintiff was not "seized;" Deputy Blange is entitled to qualified immunity; and the plaintiff lacks standing to challenge prospective application of the ordinance. On May 19, 2017, the

---

[11] Insofar as the Parish moved for summary relief dismissing the plaintiff's substantive due process and equal protection claims, the plaintiff conceded that she is not pursuing such claims.

Court granted the Parish's motion for summary judgment as to the plaintiff's facial vagueness challenge to the animal cruelty ordinance, and the Court denied without prejudice the law enforcement defendants' motion.[12]  Now, for still a third time,[13] the Parish and the law enforcement defendants seek summary judgment in their favor: Jefferson Parish submits that the plaintiff is precluded from bringing an as-applied vagueness challenge to the ordinance, Deputy Blange moves for summary judgment on his defense of qualified immunity, and the Sheriff appears to move for summary judgment dismissing the plaintiff's false arrest claim based on Louisiana law.[14]

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of

---

[12] The Court noted that neither side had briefed the threshold issue of whether the facts indicate a <u>Terry</u> stop or a de facto arrest; the Court also observed that the qualified immunity issue was "patently academic" considering that there were no facts in the record indicating the facts and circumstances within Deputy Blange's knowledge at the time he "seized" Babin.

[13] Although this is the third round of briefing on these issues, the papers are only marginally, if at all, better than prior submissions.

[14] Curiously, Deputy Blange did not then and does not now move for summary judgment dismissing the plaintiff's defamation claim.

fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); see also Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted)("[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of a claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must adduce competent evidence, including but not limited to sworn affidavits and depositions, to buttress his claims. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). However, affidavits or pleadings which contradict earlier deposition testimony cannot create a genuine issue of material fact sufficient to preclude an entry of summary judgment. See S.W.S. Erectors, Inc. v. Infax,

Inc., 72 F.3d 489, 495 (5th Cir. 1996); Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 137 n. 23 (5th Cir. 1992).

In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007) (citations omitted). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## II.

The Court first considers a threshold issue leftover from prior motion practice: whether Ms. Babin has standing to assert a claim for prospective relief.[15] Jefferson Parish submits that Ms. Babin has no standing to assert a claim for prospective injunctive relief on behalf of herself or third parties. Ms. Babin has agreed to dismiss her claim for prospective relief. Because Ms. Babin has agreed to dismiss her claim for prospective relief, Jefferson Parish's motion for summary judgment on this issue will be granted.

---

[15] This issue was raised by the law enforcement defendants in the last round of motion practice, but it was inadequately briefed.

The plaintiff's claim for prospective equitable relief relative to the animal cruelty ordinance is dismissed.

## III.

### *A.*

Title 42, U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Because Section 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability." Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997)(citation omitted). To establish § 1983 liability, the plaintiff must satisfy three elements:

(1) deprivation of a right secured by the U.S. Constitution or federal law,

(2) that occurred under color of state law, and

(3) was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

Ms. Babin's Section 1983 claims are based on alleged deprivations of two constitutional rights: (1) the right to be free from unreasonable seizure secured by the Fourth Amendment, which she says Deputy Blange violated when Blange arrested her without probable cause; and (2) the right to due process secured by the Fourteenth Amendment, of which she says Jefferson Parish deprived her because the animal cruelty ordinance is so vague that it failed to give her, and fails to give ordinary people, fair notice of the conduct it punishes and that is so standardless that it invites arbitrary enforcement. The law enforcement defendants seek summary judgment dismissing Ms. Babin's Fourth Amendment false arrest claim and the Louisiana false arrest claim on the ground that she has failed to prove a constitutional deprivation and because Deputy Blange enjoys qualified immunity. And the Parish seeks summary judgment that, if Ms. Babin is asserting an as-applied challenge to Section 7-126, she would be precluded from bringing such a challenge based on the same arguments asserted in her failed facial challenge to the ordinance.

IV.

*A.*

In its May 19, 2017 Order and Reasons, the Court thoroughly summarized the qualified immunity framework, which is incorporated by reference. When a plaintiff seeks money damages from government

officials for alleged violations of constitutional or statutory rights, officials like Deputy Blange sued in their individual capacities may invoke the defense of qualified immunity. Because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam). Once the defense of qualified immunity is "properly raised," the burden of negating the defense shifts to the plaintiff. See Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009)(citation omitted); Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)("To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'"); see also Pierce v. Smith, 117 F.3d 866, 872 (5th Cir. 1997)("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.").

"Qualified immunity shields government officials from civil damages liability," the U.S. Supreme Court has reiterated, "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012)(citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified

immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008)(citations omitted); see also Bazan v. Hidalgo County, 246 F.3d 481, 488 (5th Cir. 2001)("even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity")(citation omitted); see also Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995)(observing that "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law.").

Put simply, a public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the official's conduct violates a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged

conduct.  <u>al-Kidd</u>, 563 U.S. at 735 (citation omitted).[16]  Although the Supreme Court has left to the district court's discretion the sequence for undertaking these two inquiries, the Supreme Court has increasingly indicated a preference for first considering whether a purported right was clearly established by prior case law "without resolving the often more difficult question whether the purported right exists at all."  See <u>al-Kidd</u>, 563 U.S. at 735 ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"); see also <u>Reichle</u>, 132 S.Ct. at 2093 ("This approach comports with our usual reluctance to decide constitutional questions unnecessarily."); see also <u>Camreta v. Greene</u>, 563 U.S. 692, 705 (2011)(observing that "our usual adjudicatory rules suggest that a court *should* forbear resolving this issue")(emphasis in original); see also <u>Pearson</u>, 555 U.S. at 238-39.

---

[16] In resolving a government official's qualified immunity defense, courts have traditionally applied the two-prong process articulated in <u>Siegert v. Gilley</u>, 500 U.S. 226 (1991) and confirmed by the Supreme Court again in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). First, the Court must determine whether the plaintiffs have shown a violation of a constitutional right.  <u>Id.</u> at 201.  The second inquiry requires the Court to consider "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009)(holding that the sequence identified in Saucier is not mandatory; courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first).

"A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" <u>Hanks v. Rogers</u>, 853 F.3d 738, 746-47 (5th Cir. 2017) (quoting <u>White v. Pauly</u>, 137 S.Ct. 548, 551 (2017)). "[C]learly established law must be 'particularized' to the facts of the case [and] should not be defined 'at a high level of generality.'" <u>Id.</u> (citations omitted). "In other words," the Fifth Circuit recently explained, "outside of an obvious case, the law is only clearly established if a prior case exists where an officer acting under similar circumstances ...was held to have violated the Fourth Amendment." <u>Id.</u> (citation and internal quotation omitted).

*B.*

Ms. Babin claims that Deputy Blange violated her Fourth Amendment right to be free from false arrest. Tailored to the wrongful arrest context:

> When an individual asserts a claim for wrongful arrest, qualified immunity will shield the defendant officer[] from suit if a reasonable officer could have believed [the arrest at issue] to be lawful, in light of clearly established law and the information the [arresting] officer[] possessed. Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. Thus, a qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause. On the other hand, if officers of reasonable competence could disagree on this issue, immunity should be recognized.

<u>Mendenhall v. Riser</u>, 213 F.3d 226, 230 (5th Cir. 2000)(citations and internal quotations omitted).

The Fourth Amendment guarantees "the right of the people to be secure in their persons ... against unreasonable searches and seizures ... and no warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The Fourteenth Amendment extends this protection against "unreasonable searches and seizures" to the states. <u>Dunaway v. New York</u>, 442 U.S. 200, 207 (1979). "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" <u>Heien v. North Carolina</u>, 135 S.Ct. 530, 536 (2014)(quoting <u>Riley v. California</u>, 134 S.Ct. 2473, 2482 (2014)).

Central to a Section 1983 claim for wrongful arrest is a "seizure" of a person. <u>California v. Hodari D.</u>, 499 U.S. 621, 624 (1991)("[T]he Fourth Amendment's protection against 'unreasonable ... seizures' includes seizure of the person."). A determination of whether an unreasonable seizure has occurred, as with all Fourth Amendment issues, may only be resolved by considering the particular facts of the case. "A person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." <u>Id.</u> at 627-28. "A person is seized by the police and thus entitled to challenge the

government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." Brendlin v. California, 551 U.S. 249, 254 (2007)(citations and internal quotation marks omitted).

*C.*

Deputy Blange submits that he is entitled to qualified immunity because he had reasonable suspicion to briefly detain Ms. Babin and issue her a summons and that, even if his actions in blocking Ms. Babin's car in with his police cruiser constitute a de facto arrest or seizure, he had probable cause to briefly detain her. Ms. Babin does not allege that she was merely detained such that Deputy Blange effectuated a Terry stop, and she does not seem to quarrel that Deputy Blange had reasonable suspicion to effectuate such a stop. Instead, Ms. Babin argues that she was wrongfully arrested. Accordingly, the Court focuses on whether Ms. Babin's submission that Deputy Blange arrested her without probable cause overcomes Deputy Blange's assertion of qualified immunity in light of the undisputed facts in the summary judgment record.

To withstand summary judgment in favor of Deputy Blange on his qualified immunity defense, Ms. Babin must demonstrate that her arrest (assuming that it was an arrest and not an investigative

20

stop) was unlawful (that is, not based on arguable probable cause) and that the unlawfulness of Blange's conduct in arresting her was clearly established (that is, that no reasonable officer would have believed that there was probable cause to arrest her for leaving her dog unattended in her car in the absence of acceptable weather conditions or proper temperature control with regular monitoring). "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." Melton v. Phillips, 875 F.3d 256, (5th Cir. 2017)(quoting King v. Handorf, 821 F.3d 650, 653 (5th Cir. 2016)). Ms. Babin fails to carry her burden to show that the qualified immunity defense is not available to Deputy Blange.

To prevail on a Section 1983 claim based on false arrest, the arrestee must show that the arresting officer lacked probable cause to arrest her. Haggerty v. Texas Southern University, 391 F.3d 653, 655 (5th Cir. 2004). "Probable cause and the ensuing qualified immunity analysis turn on [the arresting officer's] reasonable beliefs and knowledge, including information received from eye witnesses." See Bone v. Dunnaway, 657 Fed.Appx. 258, 261 (5th Cir. 2016)(citations omitted).

> Probable cause to arrest depends upon whether, at the
> moment the arrest was made...the facts and circumstances
> within (the arresting officers') knowledge and of which
> they had reasonably trustworthy information were

> sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.

Adams v. Williams, 407 U.S. 143, 148 (1972)(citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  To be sure, Ms. Babin "must clear a significant hurdle to defeat [Blange's] qualified immunity." Haggerty, 391 F.3d at 656 (citation omitted).  "[T]here must not even arguably be probable cause for the...arrest for immunity to be lost."  Id.  The arresting officer is entitled to qualified immunity "if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [the arresting officer] was aware, there was a fair probability that [the arrestee] had committed or was committing an offense."  Id. (noting that "'fair probability' requires more than bare suspicion but less than a preponderance of evidence").  The relevant offense here is a violation of the animal cruelty ordinance, which prohibited animals from being left inside a vehicle while unattended unless weather conditions were acceptable or the animal was provided proper temperature control with regular monitoring conditions.  If Deputy Blange had arguable probable cause to issue her a summons for violating the animal cruelty ordinance, then Deputy Blange is entitled to qualified immunity as to Ms. Babin's wrongful seizure claim.

Viewing the evidence and disputed facts in the light most favorable to Ms. Babin, Ms. Babin left her dog unattended in her

car in the Big Lots parking lot on an afternoon where outside temperatures were in the low 70s.[17]  The parties dispute whether the windows were up or down while the dog was left unattended.  At least two witnesses saw Peyton Legion unattended in Ms. Babin's Mini Cooper and suggested that they were concerned for his well being; one of them called 911.  Deputy Blange arrived at Big Lots approximately 8 minutes after he was dispatched and approximately 13 minutes after a 911 caller reported that (a) a dog had been left unattended in a car for more than 10 minutes and (b) the dog was panting and looked uncomfortable.[18]  Deputy Blange spoke to Ms. McMurry and another concerned eyewitness for about five minutes regarding the dog being left unattended in the car, in the witness' estimation, for more than 15 minutes.[19]  Accepting Ms. Babin's version of her encounter with Deputy Blange, Deputy Blange blocked

---

[17] Ms. Babin submits that skies were overcast, while Deputy Blange testified that the sun was beating down on the car in the parking lot and that it felt hotter than 70 degrees.  The Court considers the disputed facts in the light most favorable to Ms. Babin.  The Court notes however that Ms. Babin submits only that outdoor temperatures were in the low 70s.  There is no information in the record to indicate the humidity, heat index, or the temperature inside the car.

[18] Even if Deputy Blange arrived to find the dog outside the vehicle at Ms. Babin's side (as Ms. Babin contends, but Deputy Blange disputes), Deputy Blange could have reasonably believed that the dog had been left unattended in Ms. Babin's car for around 20 minutes.

[19] Even if Ms. Babin disputes the eyewitness' accounts of the condition of her windows or convertible top or the perceived discomfort level of her dog, she does not dispute that they gave their accounts to the 911 dispatcher and to Deputy Blange at the scene.

her Mini Cooper in with his police cruiser, told her to bring her driver's license to him, and asked her why she had not left her dog at home. When Deputy Blange told Ms. Babin he was issuing her a summons, he told her it was "two against one."

When Deputy Blange issued Ms. Babin the summons, two witnesses had told him that Ms. Babin had left her dog unattended in her car in the Big Lots parking lot in the middle of the day with outdoor temperatures in the 70s while she went shopping inside the store. Even Ms. Babin does not dispute that she left her dog in the car while she shopped at Big Lots. The Court underscores that it is immaterial to the probable cause determination whether Ms. Babin actually left her dog unattended in her car under conditions that would endanger him. See Cooper v. City of La Porte Police Dept., 608 Fed.Appx. 195, 200 (5th Cir. 2015)(unpublished, per curiam). Deputy Blange's conduct is viewed objectively. As long as Deputy Blange reasonably concluded that probable cause existed to issue the summons and briefly detain Ms. Babin, he is entitled to qualified immunity for his reasonable (even if mistaken) decision. Indeed, the qualified immunity standard "gives ample room for mistaken judgments." Hunter v. Bryant, 502 U.S. 224, 226 (1991)("This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued."). Deputy Blange was entitled to credit the eye witness statements when he reported to the scene. Based on

those eye witness statements, the summary judgment record supports a finding that Deputy Blange had arguable probable cause (that is, that he was reasonable in concluding that it was fairly probable that Ms. Babin had violated the parish ordinance).

At a minimum, Deputy Blange was not objectively unreasonable in concluding that that the information conveyed to him by the witnesses, including the length of time the dog was left unattended as well as their observations of the dog's condition, were sufficient for a reasonable officer to believe that Ms. Babin had left her dog unattended inside a car in the absence of acceptable weather conditions or without proper temperature control. On his decision to issue the summons, Deputy Blange testified:

> [The 911 caller] said she arrived in the parking lot. That she was going into the store. She observed the dog in the vehicle. She went into the store, did some shopping, came back out. The dog was still in the vehicle. At that time, she attempted to go into Big Lots and see if she could find out who the owner was. She was concerned for the dog. They were unable to locate the owner. At which time, she came outside and called 9-1-1.... She advised me approximately 15 minutes [had elapsed from the time she first saw the dog until she called 9-1-1].
>
> ...
>
> She expressed her concern for the dog inside the vehicle because it was hot. She was concerned that the dog—she felt that dog was in a little distress given the amount of time the dog was in the car.
>
> ...
>
> [The weather] was warmish outside. [It felt like it was] High 70s, low 80s. Somewhere right up in there.

...

[I]t wasn't 120 degrees outside.  But it also wasn't 50 degrees where the temperature in the car, you know, with the closed windows – even cracked windows – wouldn't reach a temperature where an animal or human being would be in distress.

...

I know what it feels like to be in a hot car on a summer day....  Temperatures in a vehicle can rise very quickly.

...

[I]t was my opinion that the dog was in enough distress and that the period of time that I had understood from the witnesses that the dog was in danger, at that point I decided to issue her a misdemeanor summons in lieu of making a physical arrest.  You know, I don't believe her intention was to harm the dog.  However, that doesn't negate...the situation she placed the dog in.

In light of the undisputed portions of the summary judgment record, a reasonable officer could have believed that he was justified in issuing Ms. Babin a summons for violating the parish ordinance.

Ms. Babin complains that Deputy Blange refused to hear her side of the story after speaking with the complaining eye witnesses.  It is her position, then, that Deputy Blange failed to properly investigate the complaints regarding her unattended dog before issuing her a misdemeanor summons on an animal cruelty charge.  But she cites no case imposing such a duty on an officer responding to the scene after a 911 call, after hearing from two eyewitnesses, and when it is undisputed that she did indeed leave

her dog unattended in her car while she shopped in a store in the middle of the day with outside temperatures in the low 70s.[20]

*D.*

Even if this Court assumes that Ms. Babin raised a fact issue regarding whether Deputy Blange had "arguable probable cause" to arrest her and issue her a summons,[21] she nevertheless fails to demonstrate that her arrest violated a clearly established constitutional right. In fact, she identifies no case law whatsoever; she simply criticizes the defendants' submission, neglecting her burden in the face of qualified immunity. Ms. Babin does not suggest that Deputy Blange was incompetent or knowingly violated her rights; rather, she complains that he did not investigate her side of the story, and that the vague text of the animal cruelty ordinance allowed that she could possibly be in violation when all she did was leave her dog unattended in her car

---

[20] Deputy Blange was entitled to credit the eyewitness statements and to disbelieve Ms. Babin's denial of their statements. <u>See Cooper v. City of La Porte Police Dept.</u>, 608 Fed.Appx. 195, 200 (5th Cir. 2015)(unpublished, per curiam).

[21] The Court's resolution of the arguable probable cause prong rests in part on a determination that the parties' dispute concerning whether Ms. Babin's car's windows were up or down while Peyton Legion was unattended is immaterial because the record evidence to the exclusion of this fact issue is sufficient to establish probable cause. Ms. Babin also took issue with the inadequacies of the defendants' papers on qualified immunity. The Court agrees that the defendants initially characterized as undisputed certain facts that were clearly disputed; however, the defendants supplemented their submission to urge the Court to view all facts in the light most favorable to Ms. Babin.

for 10 minutes in 70 degree mostly cloudy weather conditions with the windows down and the convertible top partially retracted.  She fails to overcome Deputy Blange's assertion of qualified immunity by failing to identify a prior case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.

To be sure, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Ziglar v. Abassi, 137 S.Ct. 1843, 1867 (2017)(citation omitted).  To determine whether Deputy Blange falls into one of these two categories, the Court asks "whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'"  Id. (citation omitted).  If so, then Deputy Blange was either incompetent or a knowing violator of the law who is not entitled to immunity; if not, then Deputy Blange is immune from liability.

Ms. Babin was aware of her burden and her task when the Court wrote in its May 19, 2017 Order and Reasons:

> To withstand Deputy Blange's qualified immunity defense,
> assuming the parties submit the requisite evidence, the
> plaintiff must identify a case where an officer acting
> under similar circumstances as Deputy Blange was held to
> have violated the Fourth Amendment.  In addressing the
> clearly established prong, the parties should take care
> not to define the qualified immunity inquiry too
> abstractly and, in attempting to identify clearly
> established law, the plaintiff should identify factually

similar cases that speak to the circumstances of this
case. See White v. Pauly, 137 S.Ct. 548, 552
(2017)(noting the frequency with which the Court has
reversed federal courts in qualified immunity cases and
finding that "[t]he panel majority misunderstood the
'clearly established' analysis" in that it "failed to
identify a case where an officer acting under similar
circumstances as Officer White was held to have violated
the Fourth Amendment."); see also City and County of San
Francisco, Calif. V. Sheehan, 135 S.Ct. 1765, 1776
(2015)("Qualified immunity is no immunity at all if
'clearly established' law can simply be defined as the
right to be free from unreasonable searches and
seizures."); see also Tolan, 134 S.Ct. at 1866 ("courts
must take care not to define a case's 'context' in a
manner that imports genuinely disputed factual
propositions"); see also Reichle v. Howards, 566 U.S.
658, 132 S.Ct. 2088, 2094 (2012)("the right allegedly
violated must be established, not as a broad general
proposition, but in a particularized sense so that the
contours of the right are clear to a reasonable
official")(internal quotation marks and citations
omitted).

Yet, Ms. Babin fails to identify clearly established law that
prohibits an officer from briefly detaining and issuing a summons
to an individual who has left her animal unattended inside a car
while she shops in a store for more than 10 minutes when outside
temperatures are in the 70s.

"'[I]n the light of pre-existing law,'" the Supreme Court has
instructed, "the unlawfulness of the officer's conduct 'must be
apparent.'" Ziglar, 137 S.Ct. at 1867. "A clearly established
right is one that is 'sufficiently clear that every reasonable
official would have understood that what he is doing violates that
right.'" Lincoln v. Barnes, 855 F.3d 297, 301 (5th Cir. 2017).
"[E]ither 'controlling authority' or 'a robust consensus of

persuasive authority' must 'define[] the contours of the right in question with a high degree of particularity.'" <u>Wilkerson v. Univ. of North Texas By and Through Bd. of Regents</u>, 878 F.3d 147, 155 (5th Cir. 2017)(citation omitted). "The *sine qua non* of the clearly-established inquiry is fair warning. Thus we must ask not only whether courts have recognized the existence of a particular constitutional right, but also ... whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." <u>Morgan v. Swanson</u>, 659 F.3d 359, 372 (5th Cir. 2011)(en banc).

Ms. Babin has not demonstrated that Deputy Blange's conduct violated a clearly established right -- a right that is "sufficiently clear such that every reasonable official would have understood what he is doing violates that right." <u>See</u> <u>Reichle v. Howards</u>, 566 U.S. 658 (2012). In fact, Ms. Babin does not identify any precedent that has placed her constitutional question (here, whether Deputy Blange violated her right to be free from an unreasonable seizure when he relied on complaining witnesses to the exclusion of her explanation for leaving her dog unattended in a car) beyond debate.[22] "This inquiry must be undertaken in light

---

[22] Ms. Babin simply notes that "the instant matter concerns probable cause under a specific ordinance," without identifying any cases that could even arguably guide an analysis on clearly established law. In other words, Ms. Babin focuses on the deficiencies in the defendants' papers, admits that this case concerns probable cause relative to a specific ordinance, but fails to identify any cases

of the specific context of the case, not as a broad general proposition." <u>Mullenix v. Luna</u>, 136 S.Ct. 305, 308 (2015). "The relevant inquiry is whether existing precedent placed the conclusion that [the arresting officer] acted unreasonably in these circumstances 'beyond debate.'" <u>Id.</u> at 309 (citation omitted).

The law enforcement defendants move for dismissal of the plaintiff's false arrest claim based on Louisiana law, but they fail to brief the issue. Although a finding of probable cause is a defense to a false arrest claim, the law enforcement defendants fail to present any argument whatsoever on this claim. Given that this Court has only determined that Deputy Blange had arguable probable cause sufficient to warrant immunity from liability on the Section 1983 claim (and alternatively that he did not violate a clearly established right of plaintiff), the Court declines to speculate that such a finding dooms the plaintiff's state law claim.

V.

*A.*

Ms. Babin's Section 1983 claim against the Parish must be analyzed in accordance with the <u>Monell</u> framework. The Court

---

in support of her claim that could withstand Deputy Blange's assertion of qualified immunity.

incorporates its discussion of the relevant framework as summarized in its May 19, 2017 Order and Reasons.

Municipalities are "persons" within the meaning of Section 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). But, it has been cautioned, "[t]hey are liable only for their own acts and not those attributed to them by principles of *respondeat superior*." Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004)(citing Monell, 436 U.S. at 691-92). Imposition of Section 1983 liability against a municipality under Monell is appropriate in the limited circumstance of when a constitutional tort is caused through the execution of a policy or custom of the municipality. See Bowen v. Watkins, 669 F.2d 979, 989 (5th Cir. 1982)(citation omitted).

To determine whether municipal liability attaches, the Court looks to whether unconstitutional conduct is directly attributable to the municipality through some official custom or policy; "isolated unconstitutional actions by municipal employees will almost never trigger liability." See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)(citations omitted); Bolton v. City of Dallas, 541 F.3d 545, 548 (5th Cir. 2008)(citation omitted)("The municipality must cause the constitutional tort, which occurs 'when execution of a government's policy or custom, whether made by its lawmakers or by

those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"). Indeed, the rules for imposing municipal liability are well-settled; proof of three elements is vital: (1) a policy maker; (2) an official policy or custom; and (3) causation: a violation of constitutional rights whose "moving force" is the policy or custom. <u>Piotrowski</u>, 237 F.3d at 578 (citing <u>Monell</u>, 436 U.S. at 694).[1] Official municipal policy, the U.S. Supreme Court has observed, "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>See</u> <u>Connick v. Thompson</u>, 131 S.Ct. 1350, 1359 (2011)(citations omitted)("These are 'action[s] for which the municipality is actually responsible.'"); <u>Bennett v. City of Slidell</u>, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*)(defining official policy).

The Fourteenth Amendment provides that "[n]o person shall...be deprived of life, liberty, or property without due process of law." U.S. Const. amend. XIV. "Vagueness doctrine is an outgrowth of the Due Process Clause." <u>United States v. Williams</u>,

---

[1] Proof of these three elements is necessary "to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 471 (5th Cir. 1999) (citation omitted).

553 U.S. 285, 304 (2008).  Due process requires that statutes providing for criminal prosecution be drafted "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  Kolender v. Lawson, 461 U.S. 352, 357 (1983); Johnson v. United States, 135 S.Ct. 2551, 2557–58 (2015); Munn v. City of Ocean Springs, Miss., 763 F.3d 437, 439 (5th Cir. 2014)("The Due Process Clause requires that a law provide sufficient guidance such that a man of ordinary intelligence would understand what conduct is being prohibited.").

An ordinance is unconstitutionally void for vagueness under the due process clause of the Fourteenth Amendment if its lack of definitive standards either (1) fails to apprise persons of ordinary intelligence fair notice of the prohibited conduct, or (2) encourages arbitrary and discriminatory enforcement.  See Williams, 553 U.S. at 304.  The Fifth Circuit has instructed that the Court "must strike down [an] ordinance if...it does not sufficiently define the line between legal and illegal conduct." Munn, 763 F.3d at 439.

*B.*

Ms. Babin's only remaining claim against the Parish is that the animal cruelty ordinance is unconstitutionally vague as

applied to her.[23]  The Parish submits that Ms. Babin would be
precluded from bringing an as-applied vagueness challenge because
the Court dismissed her facial challenge.  The Parish invokes In
re Cao, 619 F.3d 410 (5th Cir. 2010), which it says endorses the
proposition that a plaintiff cannot succeed on an as-applied
challenge to a statute based on the same factual and legal
arguments a court considered in rejecting a facial challenge to
the statute.  Ms. Babin counters that the Parish's reliance on In
re Cao is misplaced.  The Court agrees.  The plaintiffs in In re
Cao attempted to characterize a facial challenge as an as-applied
attack, but the Fifth Circuit rejected the attempt because the
plaintiffs' so-called as-applied challenge advanced the same
principles rejected by the Supreme Court and, if accepted, would
effectively overrule precedent.  Here, the plaintiff's as-applied
challenge does not implicate arguments that this Court has
considered on the merits and rejected in dismissing the facial
challenge.  Rather, the Court simply determined that Babin could
not bring a facial challenge as a matter of law.  See Order and
Reasons dtd. 5/19/17.  The Court never held that the contested

---

[23] The Parish contends that the plaintiff does not properly allege
an as-applied vagueness challenge.  Ms. Babin says that a fair
reading of the facts alleged in her complaint as well as the
paragraph in which she states that she seeks damages from the
Parish for its enactment of Code Section 7-126, which she alleges
violated her Fourteenth Amendment rights, suffices to state a
claim.  Considering her complaint in full, the Court agrees.

language in the animal cruelty ordinance was not vague, or that she was precluded from advancing an as-applied challenge. Indeed, the Court was unable to reach the merits of the plaintiff's vagueness challenge because it was inadequately briefed and no evidence was submitted. The Parish's motion for summary judgment should be denied to the extent that it seeks judgment as a matter of law dismissing the plaintiff's as-applied vagueness challenge.

The Court notes with curiosity that the Parish fails to address the merits of the plaintiff's as-applied challenge to the ordinance. Certainly, the Parish was on notice that it misunderstood as-applied liability and that the Court could not resolve the issue given the state of the record:

> Although the plaintiff's facial challenge to the ordinance's vagueness must be dismissed, the Court is compelled to note Jefferson Parish did not move for summary judgment as to any as-applied vagueness challenge advanced by Ms. Babin. The Parish seems to suggest that it is not the proper defendant to an as-applied vagueness challenge, arguing "[w]hether an ordinance as applied to Babin under the particular circumstances as alleged and/or to be proven at trial deprived Babin of her constitutional rights is not what is before this Court as to Defendant the Parish of Jefferson." It offers no argument or legal citation in support of this assertion. If indeed it is suggesting that it is not the proper defendant to answer to Ms. Babin's as-applied vagueness challenge, the Parish's suggestion defies commonsense and misapprehends municipal liability.[24] There can be no dispute that the

---

[24] The argument is tantamount to suggesting that one may never pursue an as-applied vagueness challenge, considering that a police officer cannot possibly be the appropriate defendant to answer for the sins of an unconstitutional parish ordinance.

Jefferson Parish animal cruelty ordinance reflects the official policy of the municipality.  See Connick v. Thompson, 563 U.S. 51, 61 (2011)("[o]fficial municipal policy" includes the "decisions of a government's lawmakers"); Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984)(official policy for Section 1983 municipal liability purposes includes an ordinance passed by the municipality's law makers).  If the ordinance is unconstitutional as applied to Ms. Babin's conduct, there is unconstitutional conduct attributable to the Parish, which may be subject to liability under Section 1983.[25]  See Galbreath v. City of Oklahoma City, 568 Fed.Appx. 534, 538-39 (10th Cir. 2014)(citing Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1279 (10th Cir. 2009)(if ordinances are unconstitutional as applied to the plaintiff, the liability falls on the city)).

Thus, insofar as the plaintiff alleges that the ordinance is unconstitutionally vague as applied to her, that claim remains viable.  Even if the Court wanted to take up the issue, Jefferson Parish failed to heed this Court's prior admonition regarding placing evidence in the record that would facilitate a ruling on the as-applied challenge.  See Order and Reasons dtd. 1/11/17. Because the determination as to whether the Parish's animal cruelty ordinance is unconstitutionally vague as applied to Ms. Babin is necessarily tethered to the factual context in which the ordinance was applied, on this record, summary judgment is patently inappropriate.

See Order and Reasons dtd. 5/19/17.  In spite of this guidance, the Parish again fails to address the plaintiff's as-applied challenge on the merits.  Even though Ms. Babin's opposition papers

---

[25] The Court need not address other issues that have not been properly raised, such as what becomes of the plaintiff's vagueness challenge if she lacks standing for prospective relief, or if it is later determined that Deputy Blange did not violate her constitutional right to be free from unreasonable seizure (that is, if the Heller rule applies, see City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

briefed the issue on the merits, the Parish neglected even to reply to her arguments. Resolution of the as-applied vagueness challenge must await trial.

VI.

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Court is concerned with the poor quality of (and the necessity for) this third round of briefing on repeat issues in this factually simple case. Counsel seem to have ignored guiding or binding authority cited by this Court in its attempt to resolve the pending motions. Issues that were not briefed remain outstanding for the upcoming trial: the plaintiff's state law claims (defamation and false arrest) against the law enforcement defendants and the plaintiff's as-applied vagueness challenge against the Parish.

***

Accordingly, for the foregoing reasons, IT IS ORDERED: that the Parish's motion for summary judgment is GRANTED in part (insofar as it seeks dismissal of the plaintiff's claim for prospective injunctive relief), but DENIED in part (insofar as it seeks dismissal of the plaintiff's as-applied vagueness

challenge); and the law enforcement defendants' motion for summary judgment is GRANTED in part (insofar as Deputy Blange is entitled to qualified immunity from liability as to the plaintiff's Section 1983 claim based on the Fourth Amendment), but the motion is DENIED in part (insofar as the defendants offer no argument in support of dismissing the plaintiff's state law claims).[26]   IT IS FURTHER ORDERED: that counsel for each party shall certify in the record that all clients have been given a copy of this Court's Order and Reasons.

New Orleans, Louisiana, February 7 , 2018

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[26] As the Court noted in its May 19, 2017 Order and Reasons, the law enforcement defendants have never mentioned in motion practice the plaintiff's defamation claim, which remains pending.